IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:12-CV-405-FL

| | |
|---|---|
| B.H., by his parents T.H. and J.H., T.H., and J.H., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) **ORDER** |
| JOHNSTON COUNTY BOARD OF EDUCATION, | ) ) ) ) |
| Defendant. | ) ) |

In this action, plaintiffs B.H., a minor, through his parents T.H. and J.H., and T.H. and J.H., individually (collectively "plaintiffs"), assert that defendant Johnston County Board of Education ("the Board") failed to provide B.H. with a free and appropriate education ("FAPE") pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq*. ("IDEA").[1] The case is before the court on the parties' respective amended[2] cross-motions for judgment as a matter of law on the administrative record. (D.E. 95, 97). Specifically, plaintiffs seek review of unfavorable decisions rendered on their IDEA claims by both an administrative law judge ("ALJ") in the North Carolina Office of Administrative Hearings ("OAH") and a State Review Officer ("SRO") (collectively the "hearing officers"). (*See* D.E. 65 at 541-609 (ALJ decision);

---

[1] In 2004, the Individuals with Disabilities Education Improvement Act ("IDEIA") was enacted to reauthorize the IDEA, *see* Pub. L. No. 108-446, 118 Stat. 2647 (2004) (effective 1 July 2005). However, the short title of the IDEIA expressly provides that the law may be cited as the "Individuals with Disabilities Education Act." 20 U.S.C. § 1400(a). For consistency, the court will continue herein to cite to the law as the IDEA.

[2] In the course of reviewing the parties' original cross-motions, the court discovered that the Board had not filed an answer to plaintiffs' amended complaint and, accordingly, directed it do so. (*See* 10 June 2014 Order (D.E. 86)). Because the Board's answer to the amended complaint raised new issues, the parties were granted leave to file the now pending amended cross-motions. (*See* 11 July 2014 Order (D.E. 92)).

D.E. 66 at 114-51 (SRO decision)).[3] The amended motions have been briefed[4] and were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* 1st Public D.E. dated 3 Sept. 2014). In addition to the merits of plaintiffs' claims, this case presents two preliminary matters relating to the scope of this proceeding—a request by the Board to strike portions of plaintiffs' amended complaint and a possible challenge by plaintiffs to the lawfulness of the SRO level of review. For the reasons set forth below, the court will deny the request to strike; hold that the issue of the lawfulness of the SRO level of review has not been brought before the court; and deny the pending amended motions without prejudice as moot pending submission of second amended motions for judgment, proposed findings of fact and conclusions of law, and new briefs fully addressing plaintiffs' claims.

## BACKGROUND

In their amended complaint (D.E. 11), plaintiffs assert three claims relating to their contention that the Board denied B.H. a FAPE:

(1) the Board failed to implement material elements of B.H.'s individualized educational programs ("IEP's") throughout the 2010-11 school year (Am. Compl. ¶¶ 115-17), including those related to educational placement (*id*. ¶ 115(a)-(d)), the provision of various supplementary aids and services (*id*. ¶ 116(a)-(c)), and the provision of a certified teacher to deliver classroom instruction (*id*. ¶ 117);

---

[3] The administrative record for the proceedings below, which is voluminous, was electronically filed on 15 July 2013 at D.E. 32 to D.E. 66. Docket Entries 32 to 55 contain the 24 volumes of transcripts of the hearing before the ALJ. Docket Entries 56 to 60 contain plaintiffs' exhibits admitted at the hearing and D.E. 61 to D.E. 64 contain the Board's admitted exhibits. Docket Entry 65 contains non-evidentiary materials from the proceedings in the OAH, and D.E. 66 contains the record of the proceedings before the SRO. While initial attempts to electronically file a portion of the administrative record appear at D.E. 26 to D.E. 31, the parties requested (D.E. 67) that the court disregard these duplicative entries. While plaintiffs attached one exhibit (D.E. 11-1) to the amended complaint, they did not request that the exhibit be received as additional evidence in this case, and the time within which to do so has expired. (*See* Jt. Rule 26(f) Rep. (D.E. 15) ¶ 3(d); 9 Nov. 2012 Order (D.E. 16) 2 (adopting parties' proposed case schedule)). Accordingly, this exhibit will not be considered by the court in addressing the motions before it.

[4] The parties each filed memoranda (D.E. 96, 98) in support of their respective amended motions as well as responses (D.E. 101, 102) to the opposing amended motions. In addition, plaintiffs filed a reply (D.E. 103) to the Board's response.

2
Case 5:12-cv-00405-FL   Document 104   Filed 03/19/15   Page 2 of 15

(2) the Board failed to educate B.H. in the least restrictive environment ("LRE") throughout the 2010-11 school year (*id*. ¶¶ 118-21); and

(3) the Board's superintendent violated the procedural requirements of the IDEA when he unilaterally directed B.H.'s IEP team to change his placement to homebound services on 29 March 2011 (*id*. ¶¶ 122-24).[5]

Plaintiffs seek "all appropriate relief available" under the IDEA (*id*. ¶ 147(e)), including specifically: compensatory education for a period of three years in an amount and frequency sufficient to remedy the regression or other harm to B.H. as a result of the educational time lost during the 2010-11 school year due to the failure of the Board to implement his IEP's and provide a FAPE (*id*. ¶¶ 127, 147(c)); a prospective injunction requiring the Board to fund a private educational program for B.H. (*id*. ¶ 128); reimbursement for the costs of B.H.'s private educational program and services from 29 March 2011 until such time as the Board offers plaintiffs an IEP to which B.H.'s parents agree (*id*. ¶¶ 137-38, 147(b)(i)-(iv)); an order directing that B.H.'s current private educational program remain as his placement (*i.e.*, his "stay put"[6] placement) pursuant to 20 U.S.C. § 1415(j) until modified by court order or by agreement of the parties (*id*. ¶¶ 139-40, 147(b)(v)); attorneys' fees and costs (*id*. ¶¶ 141-46, 147(d)); and a declaratory judgment stating that the Board failed to provide a FAPE for the 2010-11 school year, the current homebound IEP fails to provide a FAPE in the LRE, and plaintiffs' private educational program is and continues to be appropriate (*id*. ¶ 147(a)).

---

[5] As this listing indicates, the court is not including in plaintiffs' claims for purposes of this Order plaintiffs' associated demands for relief. Litigation of the issues relating to the relief plaintiffs seek would be premature until their claims for liability are resolved. If plaintiffs do prevail on any of their claims for liability, the court can at that time require submissions by the parties addressing the issues relating to relief.

[6] The "stay put" provision of the IDEA provides that "during the pendency of any proceedings conducted pursuant to [the IDEA,]" the child "shall remain" in his or her "then-current education placement." 20 U.S.C. § 1415(j).

# DISCUSSION

## I. The Board's Request to Strike Portions of Plaintiffs' Amended Complaint

In its answer to the amended complaint, the Board objects that certain allegations should be stricken pursuant to Rule 12(f) "because they are beyond the scope of the official administrative record on appeal." (*See*, *e.g.*, Ans. to Am. Compl. ¶ 11). The Board references these objections in a footnote in its supporting memorandum and "requests that [the allegations] be stricken from the record." (Bd.'s Mem. 3 n.2). The Board nowhere provides a listing of the allegations in question or any argument in support of its request to strike them.

The Board's casual request falls far short of meeting the requirements for motions in this court. *See* Local Civ. Rule 7.1, E.D.N.C. Indeed, the court does not deem the request a motion at all, effective to bring the matter before the court for resolution. To the extent that the request is deemed a motion, it is DENIED for defective form and lack of support.

## II. Lawfulness of the SRO Level of Review

In their amended motion, plaintiffs assert that they are entitled to a declaratory judgment that North Carolina's two-tiered system of review is not authorized by the IDEA. Specifically, they assert that:

> the [SRO]'s decision . . . was unauthorized under 20 U.S.C. § 1415(g), and is therefore entitled to no weight in these proceedings, because an administrative appeal is only available under IDEA where a local educational agency ["LEA"] conducts the due process hearing and there is no genuine dispute that the due process hearing in this case was not conducted by a[n] [LEA].

(Pls.' Mot. ¶ 8). In other words, plaintiffs contend that the IDEA does not permit an appeal to the SRO (*i.e.*, the state educational agency, or "SEA") since the due process hearing was conducted not by the Board (*i.e.*, the LEA), but rather by the OAH.

While plaintiffs raised this issue before both the ALJ and the SRO, unsuccessfully,[7] they did not include this claim in the amended complaint in the instant action. Accordingly, the court CONCLUDES that this issue is not before it.[8]

## III. Need for Proposed Findings of Fact and Conclusions of Law and Concomitant Briefing by the Parties

"Actions authorized under [the IDEA] are procedurally unique in that they are independent civil actions in which the district court considers the record of the state administrative hearing, as well as any new evidence offered by a party, and makes findings based on the preponderance of the evidence." *County Sch. Bd. of Henrico v. Z.P.*, 399 F.3d 298, 304 (4th Cir. 2005) (citing 20 U.S.C. § 1415(i)(2)(B)). Thus, for example, it is "entirely appropriate and consistent with the district court's obligation to make its own independent determination" for the court to accept the administrative findings of fact but conclude "that the evidence considered as a whole point[s] to a different legal conclusion than that reached by the [hearing officer]." *Sumter Cnty. Sch. Dist. 17 v. Heffernan ex rel. TH*, 642 F.3d 478, 485 (4th Cir. 2011). A court is required to give "due weight" to findings of fact made by the state hearing officers, meaning that they are to be considered *prima facie* correct if "regularly made" within accepted fact-finding norms. *M.M. ex rel. D.M. & E.M. v. Sch. Dist. of Greenville Cnty.*, 303 F.3d 523, 530-31 (4th Cir. 2002) (holding that in determining whether factual findings were "regularly made" a reviewing court "should examine the way in which the state administrative authorities have arrived at their administrative decisions and the methods employed"); *see also Sch. Bd. of the City of Norfolk v. Brown*, 769 F. Supp. 2d 928, 939 (E.D. Va. 2010) ("[T]he Fourth Circuit has

---

[7] (*See* ALJ Dec. at 604 ¶ 79; SRO Dec. at 145-46 ¶¶ 52-56).

[8] Even had plaintiffs properly asserted this claim in this court, it would fail. The Fourth Circuit recently held that North Carolina's two-tiered system is permitted by the IDEA. *E.L. ex rel. Lorsson v. Chapel Hill-Carrboro Bd. of Educ.*, 773 F.3d 509, 510 (4th Cir. 2014).

recognized that 'the manner in which a hearing officer's factual findings are presented could be so deficient as to deprive the opinion of the deference to which it would otherwise be entitled.'" (quoting *J.P. ex rel. Peterson v. Cnty. Sch. Bd. of Hanover Cnty., Va.*, 516 F.3d 254, 260 (4th Cir. 2008))).

As applied in this case, this standard requires the court to determine the merits of each of plaintiffs' claims in the amended complaint based on the evidence in the administrative record, giving due deference to the "regularly made" factual findings by the hearing officers. The court finds that the present state of the record precludes the court from conducting the requisite review in an efficient and timely manner.

The principal deficiency is the failure of the hearing officers to focus adequately on plaintiffs' claims and the issues they present. Contrary to the Board's contention, plaintiffs' claims in this court are, as far as the court can discern, the same claims plaintiffs asserted before the ALJ and SRO, with the sole exception of the challenge to the lawfulness of the SRO level of review, discussed above.

Rather than focusing on plaintiffs' claims, the hearing officer decisions focus on the Board's contentions, whether or not they are responsive to plaintiffs' claims. Indeed, the ALJ's decision, which was adopted in a summarized form by the SRO,[9] is virtually a wholesale, verbatim recitation of the Board's proposed final decision. A line-by-line comparison of the two

---

[9] Specifically, the SRO explained:

> The [SRO] finds that the ALJ's Facts are regularly made and incorporates many of them in this Decision. As many of the ALJ's facts were simply recitations of testimony, the [SRO] has consolidated them into a much shorter set of facts. This makes the reading of the decision much easier and understandable. Also, the ALJ included numerous facts from testimony that were unnecessary because of the stipulations. These were omitted. Several facts omitted by the ALJ, but supported by the record, have been added. Although there are minor differences, the overall impression one gets when reading all the ALJ's Facts and the [SRO's] Facts is basically the same.

(SRO Dec. at 117-18).

6

Case 5:12-cv-00405-FL   Document 104   Filed 03/19/15   Page 6 of 15

documents reveals that the ALJ adopted, with no substantive modifications whatsoever, all 480 findings of fact and 79 conclusions of law proposed by the Board. The only addition by the ALJ was a single factual finding that "[t]he parties received notice of hearing by certified mail more than 15 days prior to the hearing and each stipulated on the record that notice was proper." (ALJ Dec. at 544, Findings of Fact ¶ 1).

As a result of the hearing officers' lack of focus on plaintiffs' claims, they failed to make findings of fact, as well as corresponding conclusions of law, on numerous issues raised by plaintiffs' claims. Perhaps the most glaring example is their failure to address in any way plaintiffs' second claim—that the Board failed to educate B.H. in the LRE throughout the 2010-11 school year. This claim, issues relating to it, and other issues as to which the hearing officers failed to make findings of fact, as well as conclusions of law, are included in the list of issues set out below that the court is directing the parties to address in further submissions required by this Order. Certain other issues are included in this list in response to additional errors by the hearing officers, among them the failure to apply the correct legal standard.

The failure of the hearing officers to make findings of fact on all of plaintiffs' claims and the underlying issues puts this court in the position of having to make extensive original findings of fact on an administrative record—which includes almost 7,000 pages of evidence—it had no role in creating. Moreover, the court would have to do so without the benefit of any proposed findings by the parties properly focused on plaintiffs' claims. The parties' briefs do not fill this void. In its briefing, the Board focuses not on plaintiffs' claims, but defense of the SRO's decision, which, as noted, simply recites wholesale the Board's contentions. While plaintiffs' briefing does focus on their claims, they lacked findings of fact in the hearing officer decisions

7

needed to adequately support and develop their arguments and did not propose to the court findings of their own.

The court has determined that the most efficient means of filling the gaps in factual findings and corresponding conclusions of law addressing plaintiffs' claims and the underlying issues is to require the parties to submit proposed findings of fact and conclusions of law properly based on plaintiffs' claims and the underlying issues, and concomitant new briefing. Because the requirement for these new submissions would effectively moot the parties' pending motions for judgment, they should be denied as such and the parties required to submit new motions. The parties are certainly in a better position than the court to undertake development of new findings of fact since they have extensive, firsthand familiarity with the evidence of record, having themselves developed the administrative record.

In certain circumstances, of course, remand by the court to an administrative hearing officer has been found to be appropriate for development of further factual findings. *See*, *e.g.*, *Z.P.*, 399 F.3d at 310; *G ex rel. RG v. Fort Bragg Dependent Sch.*, 343 F.3d 295, 307-08 (4th Cir. 2003) (remanding for further proceedings to resolve the parents' claim that the school district would be unable to implement the IEP as written because neither the appeal board nor the district court addressed the issue under the proper legal standard); *JH ex rel. JD v. Henrico Cnty. Sch. Bd.*, 326 F.3d 560, 568-69 (4th Cir. 2003) (remanding to the district court with instruction to remand to hearing officer for reconsideration of a claim where the record did not contain findings by the hearing officer necessary to consideration of the claim under the proper legal standard). At this point, though, the court is not convinced that remand is appropriate because of the potential to remedy the fact-finding deficiencies at this level and the extended delay a remand

would entail. Moreover, as discussed below, the present posture of this case appears to present the opportunity for its settlement in this court.

IT IS THEREFORE ORDERED as follows:

1. The amended motions (D.E. 95, 97) for judgment as a matter of law by plaintiffs (referred to collectively herein below as a party) and the Board are DENIED without prejudice as moot.

2. No later than 9 April 2015, the parties shall each file a second amended motion for judgment as a matter of law on the administrative record.

3. Each party shall file with its second amended motion proposed findings of fact and conclusions of law addressing all claims in the amended complaint and the underlying issues. Such claims and, set out beneath them, the underlying issues are:

    a. <u>Plaintiffs' claim that the Board failed to implement B.H.'s IEP's for the 2010-11 school year</u>.

        i. Whether B.H.'s educational placement from the beginning of the 2010-11 school year until 11 October 2010 constituted a failure to implement a material portion of the 31 March 2010 IEP from Currituck County, as written. *See Heffernan*, 642 F.3d at 484 (4th Cir. 2011) ("[A] material failure to implement an IEP, or, put another way, a failure to implement a material portion of an IEP, violates the IDEA.").

        ii. Whether 34 C.F.R. § 300.323(e), which permits a school to provide "comparable" services to students transferring "within the same school year" applies to this case and, if not, whether the Board complied with the IDEA requirement that "[a]t the beginning of each school year, each public agency must

have in effect, for each child with a disability within its jurisdiction, an IEP." 34 C.F.R. § 300.323(a); 20 U.S.C. § 1414(d)(2)(A).

iii. Whether B.H.'s educational placement from 11 October 2010 until 29 March 2011 constituted a failure to implement any material element of the IEPs, as written, dated 11 October 2010, 8 November 2010, or 15 March 2010. *See Heffernan*, 642 F.3d at 484.

iv. Whether 34 C.F.R. § 300.18(f), which relates to the qualifications of special education teachers, applies to teaching assistants or other education paraprofessionals.[10]

v. Whether the provision of services to B.H. during the 2010-11 school year by Board staff who were not certified teachers constituted a failure to implement B.H.'s various IEPs that were in effect.

vi. All other issues presented by this claim.

b. Plaintiffs' claim that the Board failed to educate B.H. in the LRE throughout the 2010-11 school year.

i. Whether B.H. was educated in the LRE at all times during the 2010-11 school year as required by 20 U.S.C. § 1412(a)(5)(A).

---

[10] The court notes that regarding plaintiffs' argument that the Board failed to provide a certified teacher to deliver classroom instruction to B.H., the SRO did not address the merits, but rather concluded that plaintiffs were not entitled to pursue this claim under the IDEA as follows:

> 30. Petitioners also claim that BH was denied services provided by a qualified teacher beginning in December 2010, when teaching assistant Kim Cannada served as the autism classroom teacher for approximately three school weeks. Such an allegation cannot form the basis of a due process petition because there is no right of action on behalf of an individual student or a class of students for the failure of a particular employee to be highly qualified. 34 C.F.R. § 300.18(f)

(SRO Dec. at 142 ¶ 30).

10

Case 5:12-cv-00405-FL   Document 104   Filed 03/19/15   Page 10 of 15

ii. Whether any changes made to B.H.'s placement on the continuum of alternative placements during the 2010-11 school year were made in accordance with the IDEA's procedural requirements. *See* 34 C.F.R. §§ 300.115, 116.

iii. All other issues presented by this claim.

c. <u>Plaintiffs' claim that the Board's superintendent violated the procedural requirement of the IDEA by unilaterally directing B.H.'s IEP team to change his placement to homebound services</u>.

i. Whether the ruling by the hearing officers that B.H. was denied a FAPE between 29 March 2011 and 10 June 2011 due to the Board's stipulated procedural violation that occurred when B.H.'s placement was changed to homebound renders moot any challenges raised by plaintiffs to the substance of the 29 March 2011 IEP or its implementation.

ii. All other issues presented by this claim.

4. The proposed findings of fact and conclusions of law shall meet the following requirements:

a. Each proposed finding of fact shall include a citation to all evidence the party proposing the finding contends supports it. All citations to the administrative record shall include the docket entry number, the page number(s) assigned by the court's CM/ECF electronic filing system, and, where applicable, the paragraph number(s) and transcript line number(s). The evidence cited by a party in support of a finding will be deemed the only evidence that the party contends is supportive of the finding.

b. Each proposed conclusion of law shall include a citation to all proposed findings of fact the party contends supports it.

c. If a party proposes a finding or conclusion previously made by the ALJ or SRO, the party shall identify it as such by including with it the citation for the corresponding finding or conclusion made by the ALJ or SRO. Any such proposed findings and conclusions shall be subject to the foregoing subparagraphs 4.a and 4.b.

5. Each party shall also file with its second amended motion a supporting memorandum of law, which shall not exceed 60 pages in length exclusive of the certificate of service and any attachments. Each party's supporting memorandum shall be subject to the following requirements:

a. The memorandum shall set out the party's arguments on each of plaintiffs' claims in the amended complaint and the underlying issues as set out in paragraph 3 above.

b. The memorandum shall cite to all of the party's own proposed findings of fact and conclusions of law it contends support each argument it makes. The evidence cited by a party in support of an argument, by citation to a proposed finding of fact or otherwise, will be deemed the only evidence that the party contends is supportive of the argument.

c. To the extent that the Board contends that a claim or issue raised in plaintiffs' amended complaint was not first raised in the proceedings below, its memorandum shall identify any such claim or issue as well as any evidence in the administrative record in support of its contention.

d. The Board's memorandum shall identify and be accompanied by any document containing policies and procedures that were followed by the Board in implementing the IDEA at any time material to this case, excluding the IDEA itself, its implementing regulations, and the North Carolina Policies for Governing Services for Children with

Disabilities. The policies and procedures the Board shall identify and submit include, but are not limited to, those referenced in the administrative record as follows:

    i.    Wilma Bisesi's testimony that a school district has 20 days to provide comparable services to a student who transfers to Johnston County from another county in the state. (D.E. 47 at 110:16-22).

    ii.    Kara Acree's testimony that the Board's practice is that it generally takes 30 school days to complete the "transition process" for a child transferring to Johnston County from within the state and that comparable services are provided during that time. (D.E. 48 at 125:12 to 126:3).

6. Each party shall file a memorandum in response to the opposing party's motion within 21 days after the motion is filed. The memorandum shall not exceed 20 pages in length.

7. To provide the parties with an opportunity to obtain answers to questions they may have regarding compliance with this Order, the court will conduct a teleconference on 2 April 2015 at 2:30 p.m. Counsel for the Board is directed to call counsel for plaintiffs, and once counsel for both parties are on the line, the Board's counsel shall call Judge Gates' chambers at (919) 645-1790 to begin the telephone conference. The telephone conference will be recorded. In the event both parties believe such a telephone conference is unnecessary, they shall file a joint motion no later than 1 March 2015 seeking its cancellation.

## IV. Need for Consideration of Settlement Proceedings

Serious consideration should be given to attempting to resolve this case through a mediation or court-hosted settlement conference. Among other reasons, the parties have already devoted substantial resources to litigating this matter and substantial additional resources will be required, not only at the district court level, but also for any appeal. The question is presented

whether such resources are disproportionate to the resources implicated by plaintiffs' claims. Moreover, without expressing any opinion on the merits of plaintiffs' claims, the court notes that, as the foregoing discussion indicates, there are fundamental deficiencies in the hearing officer decisions.

To assist the court in determining whether to order the parties to participate in a mediation or court-hosted settlement conference (or both, if necessary), the parties shall confer about the matter and submit a memorandum to the court no later than 26 March 2015 setting out their joint position with respect to the convening of a mediation and/or court-hosted settlement conference or, in the event the parties cannot agree on a position, their separate positions. If the memorandum proposes a mediation, it shall identify one or more mediators available to preside over the mediation. The memorandum shall also include any proposal the parties may wish to make regarding suspension of the deadline for filing second amended motions for judgment and the related documents pending completion of any settlement proceedings ordered.

## **CONCLUSION**

In summary, the court DENIES the Board's request to strike; CONCLUDES that the issue of the lawfulness of the SRO level of review is not before the court; DENIES WITHOUT PREJUDICE the pending amended motions (D.E. 95, 97) pending submission of second amended motions for judgment, proposed findings of fact and conclusions of law, and new briefs fully addressing plaintiffs' claims as required herein; DIRECTS the parties to participate in a teleconference on 2 April 2015 at 2:30 p.m.; and DIRECTS the parties to file a memorandum on convening a mediation and/or court-hosted settlement conference.

14

Case 5:12-cv-00405-FL   Document 104   Filed 03/19/15   Page 14 of 15

SO ORDERED, this the 19th day of March 2015.

_____
James E. Gates
United States Magistrate Judge